In re SIMMONS et al., Board of Water Supply.

(Supreme Court, Appellate Division, Second Department.   November 18, 1910.)

1. EMINENT DOMAIN (§ 202*)—PROCEEDINGS—SUFFICIENCY OF EVIDENCE—VALUE OF PROPERTY TAKEN.

   In proceedings by the board of water supply of New York City to take land for providing an additional water supply, evidence *held* to show that the parcels taken were valuable for sale as building lots and that there was a demand for them as such, at prices as shown by the evidence.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 541; Dec. Dig. § 202.*]

2. EMINENT DOMAIN (§ 134*)—MEASURE OF COMPENSATION.

   Where several tracts sought to be taken by New York City for additional water supply purposes were valuable for sale as building lots, and their value as lots could be ascertained with reasonable certainty, the award of damages was properly based upon their value as building lots.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

3. EMINENT DOMAIN (§ 263*)—PROCEEDINGS—REPORT OF COMMISSIONERS.

   The Appellate Division cannot, on appeal in proceedings to take land for additional water supply purposes for New York City, amend the report of the commissioners of estimate and assessment, but will remand the same to the commissioners for correction.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 687; Dec. Dig. § 263.*]

   Hirschberg, P. J., dissenting.

Appeal from Special Term, Westchester County.

In the matter of the application and petition of J. Edward Simmons and others, constituting the Board of Water Supply of the City of New York, to acquire real estate for the purpose of providing an additional supply of water for the use of New York City (Hillview Reservoir, section No. 1, parcels Nos. 1 and 3). From orders assessing damages, Arabella D. Huntington, and another, as executors of the last will of Collis P. Huntington, deceased, appeal. Reversed, and proceedings remitted to the commissioners for the amendment of their report.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Tompkins McIlvaine (Albert Southard Wright, on the brief), for appellants.

Henry T. Dykman, for respondents.

THOMAS, J.   Did commissioners adopt an improper method of ascertaining the damage?   From the fact that they received evidence of the value of the premises as if subdivided into lots according to a map, it is inferred that the awards are based thereon.   The property consists of parcel No. 1, containing 1.018 acres, for which the award was $14,500, and parcel No. 3, containing 3.352 acres, for which the award was $31,500.   The parcels westerly abut Central Park avenue, which is an improved thoroughfare from Yonkers to New York, with gas street lamps and double lines of trolley cars, and are separated by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Jerome avenue, which is passable, but not maintained suitably, for travel. The parcels are within a half mile of the line of the city of New York, and the distance in time from the City Hall by steam car, or by the trolley and elevated railroad, is about one hour. To the southwest, some 1,200 to 1,500 feet, is Lincoln Park; about a half mile to the northwest is Hillview Park; within 3,000 feet is Wakefield Park; while Lowerre station is from 1,000 to 1,500 feet distant. These are settled and improving communities, and a desirable part of Yonkers is 1,000 feet away. Parcel No. 1 is cleared, dry, and shaded. Parcel No. 3 has a rough surface, and is covered with trees and undergrowths.

The property in the vicinity has not been used for residences, nor with a single exception have there been sales for such purpose; but this is in some degree due to a policy of increasing holdings, and refusal or disinclination to sell. Those who had, kept and added. But it cannot be denied that the lands have their greatest value in their availability for sites for houses. The witnesses for the city value each piece at $5,000. So 4.37 acres of land are worth $10,000. For what purpose? Manifestly not for farming or gardening purposes. The value must consist either in a present demand for building purposes, or the probability of such demand in the future. Their present value indicates present or future use for such purpose. The owner's experts estimated the value for such purpose by taking imaginary lots one by one and stating its market value; that is, their statement was that the lots, identified by their several numbers, would, if offered, bring the prices named, and so an aggregate value of $107,150 was asserted. What knowledge, information, or experience did the witnesses have that enabled them to reach such sum? Essentially it is a sale upon foreclosure of the property west of Central avenue, known as the Kneeland sale. That land was similar to this in physical condition, and was subject to a mortgage covering also this land. By direction of the court the mortgaged land, excluding the land taken, was offered first in gross, and thereupon in plots of about 50x100. The sums bid for plots exceeded the bid for the land in gross. The sale was in September, 1907. The city took title to the lands in question in May, 1907.

The prices received on such sale would fully justify the awards, if it were inferable that the present land would have sold equally well in lots in May, 1907. There is nothing to show that they would not. They are located as favorably, and have at least equal advantages. The experts for the city deem the sums bid at the Kneeland sale as extravagant, and far out of harmony with sales in neighboring localities. If the land then sold were here involved, those witnesses would doubtless state that it was not lot property, that there was not demand for it, and it could not be sold as such. But there was a demand for it, and it did sell as lot property, and if the land taken by the city had been offered for sale at the same time, there is nothing whatever to dispute the conclusion that it would have sold equally well. The simple issue is: Shall the opinion of the city's experts be accepted against an uncontradicted fact? I prefer undisputed history to disputing expert evidence. The Kneeland sale was public, fair, attended; the lots

were wanted; the bidding was active and genuine. There were then, as now, no lots save on maps.

The result is informing. It is just the instruction needed to solve the present question. It took place at such time and under such circumstances as advise the commissioners and the court of the very facts needed to be known to decide in this proceeding, viz.: Was this land, when the city took it in May, 1907, valuable for sale in lots, and was there a demand for it in such subdivisions, and what were the lots worth? The Kneeland sale answers clearly every pertinent question and leaves nothing in doubt.

This court cannot amend the report of the commissioners; but the order should be reversed, and the proceedings remitted to the commissioners, to amend their report by inserting the names of the appellants as the owners of the parcels in question and as entitled to the award.

Order reversed, with $10 costs and disbursements, and proceedings remitted to the commissioners of appraisal for disposition in accordance with the opinion of THOMAS, J. All concur, except HIRSCHBERG, J., who dissents.