In re BOARD OF WATER SUPPLY OF CITY OF NEW YORK.

(Supreme Court, Special Term, Westchester County.   July, 1911.)

1. WITNESSES (§ 392*)—IMPEACHMENT—CROSS-EXAMINATION AS TO INCONSISTENT STATEMENTS.

A witness who has estimated the damages for condemnation of two-thirds of a tract at $866,000 may, on cross-examination, be asked as to his having valued as assessor the entire tract at $142,000 in assessment rolls during years just previous, when, he admitted, the general real estate market conditions were the same as at the time of condemnation.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1249–1257; Dec. Dig. § 392.*]

2. MUNICIPAL CORPORATIONS (§ 394*)—DAMAGES—TEMPORARY INCONVENIENCE.

Laws 1905, c. 724, § 42, as amended by Law 1906, c. 314, § 9, relative to the acquisition of lands for an additional water supply for New York City, giving the owner of land not taken, but decreased in value "by reason of the execution of any plans for such additional water supply," does not authorize damages for temporary inconvenience occasioned by prosecution of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 938, 945; Dec. Dig. § 394.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EMINENT DOMAIN (§ 127*)—DAMAGES—HIGHWAYS.

The owners of the fee of a highway taken by condemnation are properly awarded substantial damages for the fee; it fairly appearing that the public authorities would in the near future have abandoned such highways and accepted a new one as a substitute therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 348; Dec. Dig. § 127.*]

4. EMINENT DOMAIN (§ 226*)—CLAIM FOR DAMAGES.

Under Laws 1905, c. 724, § 19, providing that every owner or person in any way interested in any real estate to be condemned under the act shall, within a certain time, file with the commissioners of appraisal, a statement of his claim, a claim of "an interest in" certain lands, is sufficient, without specifying that the interest is an easement.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 580; Dec. Dig. § 226.*]

5. EMINENT DOMAIN (§ 149*)—DAMAGES—NOMINAL AWARDS.

Nominal awards, at least, should be made in condemnation proceedings to owners of private interests in parts of streets condemned.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 149.*]

In the matter of the application and petition of the Board of Water Supply of the City of New York to acquire certain real estate under Laws 1905, c. 724. Heard on motion to confirm the sixth separate report of commissioners. Report sent back to commissioners, with directions to reconsider certain matters.

See, also, 128 N. Y. Supp. 1114.

Joseph A. Flannery (Benjamin Trapnell, of counsel), for claimant of parcel No. 4, for the motion as to said parcel.

Arthur J. Burns, for claimants as to parcel No. 2, for the motion as to said parcel No. 2.

Parsons, Closson & McIlvaine, for claimants Huntington as to parcel No. 2, opposed.

Archibald R. Watson, Corp. Counsel, and H. T. Dykman, for the city of New York opposed, as to parcels Nos. 2 and 4.

MILLS, J. This is a proceeding to acquire a tract of land in the western part of the city of Yonkers, desired by the city of New York for the purpose of constructing and maintaining there a reservoir in connection with New York City's contemplated new water supply to be obtained from the Catskill region. In its condemnation proceedings the city of New York secured the appointment of a separate commission for each of the several sections into which it divided the lands to be acquired. In this proceeding, having to do with section No. 1 of those lands, the commissioners recently made their sixth separate report, which embraces parcels Nos. 2, 4, 8, 14, 17, 22, 27, 29, 34, 38, 40, and 54, and a claim presented by the Ramapo Water Company. Upon the statutory motion to confirm the report, objections were made to several of the awards, oral argument was had, and finally very full and able briefs were submitted by the respective learned counsel.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I now proceed to consider those objections separately.

First. The city of New York objects to the confirmation of the report as to the general award made upon parcel No. 4. The report as to that parcel makes a general award to the claimant, David H. King, Jr., of $440,000. That parcel consists of 53.636 acres of land, being part of an entire tract containing 86 acres. The principal objection made to this award is that the commission received evidence of the value as building lots of the land taken, and of the residue of the tract not taken, although the same has not yet been actually subdivided into building lots, except as being mapped, when the city claims that they were not, when taken, presently marketable or available for that use. The situation of the lands is much the same as that of parcels Nos. 2 and 3, Hill View reservoir, section No. 1 (the same section), considered by the Appellate Division in this department in Matter of Simmons (Huntington Appeal) 141 App. Div. 120, 125 N. Y. Supp. 697, affirmed by the Court of Appeals without opinion June 12, 1911, and of Parcel No. 5, same section, considered in that Appellate Division in Matter of Simmons (Ware Appeal) 128 N. Y. Supp. 1071. Upon the views expressed in the opinions of the Appellate Division in those cases, I think that the commissioners here did not err in receiving evidence of the availability and marketability of the lands as building lots and of their values upon such basis, or in making their awards upon the theory that the lands were so available and marketable. The amount allowed seems not unreasonable as compared with the estimates of the expert witnesses, and was well within the extremes of their testimony. The time needed according to the concessions of the claimant's witnesses within which to develop and actually market all of the proposed lots does not appear unreasonable for the adoption of such basis. Indeed, it is a fact of practically common knowledge hereabouts that land in the locality of those lands for many years has ceased to be regarded or valued as agricultural land, but has been considered and valued as prospective building lot sites. Indeed, the values given by the city's experts can be justified upon no other basis. I therefore would not feel warranted in setting aside the general award as excessive. Such award of $440,000 is large and much in excess of the estimates of the city's witnesses, although much less than those of the witnesses for the claimant. It is manifest that upon the trial of so important an issue as that presented in reference to this parcel each party should have been carefully accorded by the commissioners his or its full substantial rights.

[1] The record shows that as to this parcel the city was by the rulings of the commission deprived of a very substantial right upon the cross-examination of the witness Mitchell, who was a leading expert witness for the claimant. Upon direct examination he estimated the value of the land actually taken as $682,619, and the general damage to the rest of the tract as $183,828, making a total damage sustained by claimant of $866,447. It appeared upon his cross-examination that he had been a member of the board of assessors of the city of Yonkers, which embraces these lands, in the years 1904, 1905, and 1906, shortly before the lands were herein taken by New York City,

and that, as such assessor, he had under oath in those years valued the entire tract in the assessment roll of the city. The counsel for the city of New York, continuing the cross-examination, then by various appropriate questions, producing and submitting to the witness the assessment roll alleged to have been verified by him as such assessor, attempted to show out of the witness' own mouth that at a time when he admitted that the general real estate market conditions were the same as when the land was herein taken by the city he had valued the lands therein—that is, the entire tract—at only the sum of $142,-000, whereas, as a witness for the claimant, he had just estimated the damages for the taking by the city of only about two-thirds of the tract at the sum of $866,447—a difference which, unexplained, appears startling. The inquiries of the counsel of the city to the above effect were all excluded by the commission upon the strenuous objection of the counsel for the claimant.

It is manifest, and, indeed, elementary, that such line of inquiry upon cross-examination was entirely proper. Nothing is more common in the conduct of any sort of a judicial trial than an effort to impeach an opposing witness by showing or attempting to show that out of court he has made a statement as to a material fact contrary to his direct evidence as to the same. If the witness upon cross-examination denies the making of such contrary statement, it is always competent for the opposing party to prove by other appropriate evidence that he did make it. The ruling of the commission excluding such line of inquiry upon such cross-examination was plainly erroneous. It may also have been very prejudicial to the city. It may be a matter of common belief that boards of assessors in Westchester county do not assess land at anything like its real market value, fixing that standard by recent neighborhood sales or by the opinions of men experienced in real estate matters; but it does not seem possible that any such discrepancy between assessed and real market values can exist as that above indicated. It may well be that, had full cross-examination of the witness along the line attempted been allowed, he would have been entirely discredited with the commission. While it is well settled that in general the report of such a commission will not be set aside for mere errors in receiving or rejecting testimony, yet in this case the matter at issue is very important. A very large award was made, and evidently a large award must be made in the end. There is a wide difference in estimate between the witnesses of the opposing parties, and the witness sought to be impeached was one who would naturally have great weight with the commission, and the alleged contradicting statement was not a casual talk or biased estimate, but was a disinterested estimate made under oath and in the discharge of a public duty. Under these circumstances, I have, after much reflection, concluded that the report, as to such general award upon parcel No. 4, should be sent back to the commissioners with the direction to reopen the case as to that parcel, strike out all the testimony of the witness Mitchell, unless he shall be produced by the claimant for further cross-examination by the city, and, if he be so produced, then to per-

mit him to be fully examined upon both cross and redirect, and then to reconsider the entire evidence as to such parcel and make such award thereon as they may consider to be proper.

[2] Second. The report also contains the following as a special award upon parcel No. 4, viz.:

"We further find that the said David H. King, Jr., is the owner of land not taken in this proceeding whose value during the period in which the Hill View reservoir is to be under construction is decreased by reason of the execution of the plans for such reservoir; and if the said David H. King, Jr., is entitled, in addition to the sum above stated, to recover damages for such decrease in value under the provisions of chapter 724 of the Laws of 1905 as amended by chapter 314 of the Laws of 1906, then seventy-five thousand (75,000) dollars is the sum ascertained and determined by us to be paid the said David H. King, Jr., as the amount of such damages in addition to the sum hereinbefore stated."

To this award the city especially objects, upon the ground that the same is totally unauthorized by the statute under which these proceedings are taken. It appears from the evidence and the briefs that the "land not taken," referred to in the above award, is the residue of the entire tract of 86 acres, from which 53.636 acres are taken herein. From the language of the award it is not clear just what is meant by the expression, "whose value during the period in which the Hill View reservoir is to be under construction is decreased by reason of the execution of the plans for such reservoir"; i. e., whether the meaning intended is that the market value of the residue at the time of the taking was by the taking permanently reduced by the amount stated, viz., $75,000, or that such amount represents a depreciation which will continue only during the period of the construction of the reservoir. The testimony of the claimant's witnesses upon which this award was made, or at least sought, indicates that its basis is largely the disturbance likely to result upon such residue of the claimant's lands from the work of constructing the reservoir upon the land taken and upon other neighboring lands devoted to that purpose. Those witnesses considered that it would take about seven years to construct the reservoir; that during that period large numbers of men, including many Italians, would be employed there; that blasting would take place; and that innumerable trespasses upon such residue would be inevitable. It seems clear that at least some considerable part of what these witnesses deemed elements of damage were incompetent to be considered and allowed by the commissioners.

In Matter of Squire, 125 N. Y. 131, 26 N. E. 142, the Court of Appeals held that the provision in section 18 of chapter 490 of the Laws of 1883, which authorized the commissioners in proceedings by the city of New York to acquire lands for an aqueduct to provide an increased water supply to award damages to the owner of lands contiguous to land taken "which may be affected by the construction and maintenance" of the aqueduct and its appurtenances, did not make the city liable to adjacent lot owners for damages for the temporary inconvenience occasioned by the prosecution of the work. That court in its opinion held that the provision of the act above recited "applies

only to permanent injuries to the land from the completed works. and their use thereafter." The opinion upon that point further said:

"It may be supposed that the Legislature understood that the construction of the aqueduct would injuriously affect rights appurtenant to contiguous lands, and that the structures which were to form a part of the aqueduct system might interfere with the enjoyment or impair the value of such contiguous lands, and that for consequential injuries merely sustained in consequence of the construction and maintenance of public works under legislative authority the parties would not, under the general rule of law, have any redress. It was, we think, to meet this class of cases that the provision in question was made. It would require very clear language to impose a liability upon the city for damages for the temporary inconvenience which would be occasioned to adjacent lot owners from the prosecution of the work and during the course of construction." 125 N. Y. 134, 135, 26 N. E. 142.

It is contended by the claimant here that the language of section 42 of chapter 724 of the Laws of 1905, as amended, under which this award is attempted to be sustained, is broad enough to cover temporary damages, and not alone permanent ones. This contention rests upon the words in said section, "by reason of the execution of any plans for such additional water supply by the city of New York." I perceive in that language no substantial difference in that respect from the terms used in the act of 1883, above recited, which were construed in the Matter of Squire, supra, as applying only to permanent damages. The words in that act were "which may be affected by the construction and maintenance" of the aqueduct. It would seem that the expression "construction" there was substantially the equivalent of the expression "execution of any plans" in the act of 1905. That liability for such temporary damages is not included in a general statutory provision for compensation in condemnation cases was held by the former General Term in Matter of Thompson, 43 Hun, 416, affirmed without opinion, 110 N. Y. 669, 18 N. E. 481.

No doubt the damages to the residue of claimant's land—that is, the depreciation in its market value when taken by the city—caused by the fact that the part taken was to be devoted by the city to the use of building and maintaining a reservoir, is a proper element of damage to be considered by the commissioners and included in their award. South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366.

It may be true that in making the special award of $75,000 the commissioners considered and included some elements of damage which they might properly have considered and included in making the general award. I am, however, strongly impressed that the general award of $440,000, which upon the record here cannot be considered excessive so that it should be set aside upon that ground, is in itself ample and liberal compensation to the claimant for all damages of any lawful nature sustained by the city's appropriation of the claimant's land for the purposes stated. Doubtless the conclusion already above reached, as to the effect of the limiting of the cross-examination of the witness Mitchell, would necessitate the setting aside of this special award as well as the general one. Still, I am so strongly impressed with the idea that the special award is unauthorized, because largely

illegal, that I have determined to set aside the special award altogether, and not to remit that to the reconsideration of the commissioners.

[3] Third. The report makes an award of $1,350 to the owners of the fee of parcel No. 2, subject to the easements therein of the owners of adjoining lands. Said parcel consists of a section of the public highway known as Old Jerome avenue. The city objects to the confirmation of this award upon the ground that it is excessive, claiming that it should have been merely for a nominal amount. It is undisputed that the commissioners should have made some award, at least nominal, to the claimants as the owners of the fee. In the end the question of the amount of the award was by all parties left to the commissioners, substantially without any direct evidence of value or damage. In view of the situation, which fairly indicated that the public authorities would be very likely in the near future to abandon the old highway known as Old Jerome avenue, and accept the new one known as Central Park avenue as a complete substitute therefor, I think that the commissioners were warranted in regarding the fee of parcel No. 2 as having been of substantial value at the time of the acquisition by the city herein, viz., May 20, 1907. It is manifestly a very difficult matter to determine the then value of such fee interest. I am not convinced that in fixing it at the sum of $1,350 the commissioners acted upon any improper rule or basis of award, or that the amount so determined should be regarded as excessive. Therefore the report, as to that award, must be confirmed.

Fourth. The executrix and executor of the last will and testament of Collis P. Huntington, deceased, upon this motion ask to have the matter referred back to the commissioners to take proof and to report as to their claim of an easement in and over said parcel No. 2 as appurtenant to two plots of land designated, on a blue print filed, as "A" and "B," and the city objects to the granting of this request. By such blue print it appears that the highway known as Old Jerome avenue runs in that locality substantially north and south; that parcels Nos. 1 and 3 lie, respectively, on the west and east sides of said highway, along its northerly part, where it joins the highway known as Central Park avenue. Parcel No. 2 is the section or part of said Old Jerome avenue which lies between said parcels Nos. 1 and 3. Plots A and B abut on said Old Jerome avenue, respectively, on the west and east sides thereof south of said parcels 1, 2, and 3. Doubtless, as matter of law, plots A and B have, as appurtenant thereto, private easements of way over parcel No. 2 to Central Park avenue. At the hearing or trial before the commissioners these Huntington claimants appeared and sought to introduce evidence of the value of such easements over parcel No. 2 appurtenant to plots A and B. The commissioners refused to receive such evidence upon the ground that such claimants had not filed or presented a sufficient statement of any such claims, as required by section 19 of said act, and that the three-year period in which they should have done so had expired, the day of such offer being subsequent to the expiration of such period. In their report, however, the commissioners reported that in the awards previously made by them to said claimants upon and for parcels Nos. 1 and 3

they had included "all the right, title and interest which these claimants had in and to an easement over that part of parcel No. 2 lying in front of and adjacent to parcels 1 and 3 (which appears to constitute the whole of parcel No. 2). * * * We therefore find the claimants are not entitled to any further award for their easement in parcel No. 2." As to the claim made, it is plain that this language in the report means that in their prior report awarding damages to said claimants for parcels Nos. 1 and 3 the commissioners had awarded damages for every easement in parcel No. 2, which these claimants owned or in which they were interested. If, of course, this be true, the claimants were not injured in any way by the refusal of the commissioners to receive their evidence of damage to plots A and B by being deprived of their appurtenant easement in and over parcel No. 2.

[4] As to the position taken by the commissioners in rejecting the evidence, viz., that the claimants had not presented a sufficient statement of such claim, I think that the commissioners erred. The claim filed by the claimants was of "an interest in the parcels of land which are to be taken in this proceeding, denoted in the petition herein as parcels 1, 2, and 3." The statute does not expressly require a specification of the character of the claim to be made in the notice; that is, whether it be of a fee or an easement or of whatever character. The notice of these claimants was equally general as to their interest in parcels 1 and 3 as it was as to their interest in parcel No. 2. I think that it was sufficient to meet the requirements of the statute as to each parcel and to justify proof before the commissioners of any interest whatever in either of the three parcels.

From the record of the prior report of these commissioners making awards for parcels Nos. 1 and 3, a transcript of which is submitted to me by the city, it appears that the award for each parcel was "for the taking of the fee designated on said map as parcel (No. 1 or No. 2) * * * *and of all the other real estate laid down on said map.*" It is contended by the city that the closing words indicate that the award included any and all easements owned by the claimants in parcel No. 2, which was "real estate laid down on said map." No doubt technically it has upon its face that significance. I am at a loss, however, to understand how or why the commissioners in making awards for parcels Nos. 1 and 3 after trial of the claims as to those parcels included therein an award for easements in parcel No. 2 appurtenant to plots A and B. It is contended by these claimants that upon the trial as to parcels 1 and 3 no evidence was offered or taken as to the value of any easement in parcel No. 2 appurtenant to plots A or B, and I understand such contention is not disputed by the city. Moreover, the ground taken by the commissioners and expressed by them upon the record for rejecting the offered evidence upon the trial as to parcel No. 2, as above stated, does not indicate at all that that evidence or evidence of that character had been received and considered upon the prior trial as to parcels 1 and 3.

Under these circumstances, it seems proper that the matter as to the claim of the Huntington executor and executrix for deprivation of easements in parcel No. 2, appurtenant to plots A and B, should be

referred back to the commissioners with direction to receive such evidence and consider and determine such claim, or to explicitly report that they have already considered and determined the same, and included it in the award already made by them for and upon parcels Nos. 1 and 3.

[5]  Fifth. It is claimed in behalf of the city that as to parcels Nos. 8, 14, 17, 29, 38, 40, and 54, being sections of public streets, the commissioners erred in making no awards whatever to the owners of private interests therein; but that they should have made to them at least nominal awards.  No doubt technically this contention is correct, and as to those parcels the matter will be sent back to the commissioners, with directions to reconsider them and to make thereon at least nominal awards.