**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,**

v.

**BLUE RIDGE BAPTIST TEMPLE, INC., et al., Exceptions of Missouri Public Service Company, Appellant.**

**No. WD 30491.**

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr. and James B. Jackson, Asst. Counsel, Missouri State Highway Commission, Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

Respondent condemned a strip of land in or near Lee's Summit, Missouri, through appellant's about 84 acres of land for the construction of Interstate Highway 470. Appellant's land generally fronts on old U. S. Highway 50 on its west with the exception of an area occupied by Dave L. Cross Motors. To its north is land owned by Unity Village, and to its south and southeast is about 340 acres of land owned and occupied by the Western Electric Company. Interstate 470 upon appellant's property begins at its southwest corner, and runs in a northeasterly direction, dividing the tract into two separate parcels of land.

The one dispositive issue concerns the trial court's permitting testimony, over objection, as to respondent's not prohibiting appellant's use of certain temporary easements during construction of the roadway. The petition pleaded (Paragraph 8. 15.30) a full taking of the temporary easements without any permission being granted to appellant to use the areas during the time of construction.

The testimony complained of was that of respondent's witness, Harry Hutton. It was to the effect that appellant would have the right to maintain an access road and make a sewer connection in the easement areas because such would not interfere with construction; that respondent would not prohibit the use of a portion of an easement in a drainage area, but that appellant would probably have to put in a pipe in the low area to permit drainage; and also that there would be no prohibition in connecting to a sewer line manhole on the northeasterly part of the property. These matters were said by the witness to be permitted by

Howard F. Sachs and Lowell L. Smithson, Judith Paxton Rea, Kansas City, for appellant; Spencer, Fane, Britt & Brown, Kansas City, of counsel.

respondent in all roadway construction cases. The trial court overruled the objections to this line of testimony upon the theory that it had to do with what would interfere with construction, or with what would be compatible with construction—what it would require or forbid.

■ The dispositive issue is controlled by *Shell Pipe Line Corporation v. Woolfolk,* 331 Mo. 410, 53 S.W.2d 917 (1932). Here, the issue is whether the trial court erred in *admitting* evidence, the testimony of Hutton, as to respondent's *lessened* use of its easements' areas during the roadway construction period. In the *Woolfolk* case, the issue was whether the trial court erred in *excluding* evidence that the condemnor did not fence its right of ways and would not fence its right of way across the landowners' property, because that testimony would have tended to reduce the damages to the property taken. There was no pleading limiting condemnor's right to the land without fencing the right of way. At page 918[1–3], the court said, "The well-established doctrine in this state is that the condemning party may appropriate less than the full rights available under the statute, and the fact that the use is so limited is a proper matter for consideration in fixing the amount of damages to be allowed. (Citing cases and authority.)", and quoting from 20 C.J., pp. 768, et seq., in which *St. Louis, etc., R. Co. v. St. Louis Union Stock Yards Co.,* 120 Mo. 541, 25 S.W. 399, 404 (1894), and cases from other jurisdictions were cited, " 'The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights and use and enjoy the property taken to the full extent.' " and "And our decisions hold that the condemning party's *purpose* to exercise less than the full rights available under the statute should appear with reasonable certainty in the petition or be brought in by way of amendment thereto. (Citing cases.)" No error was found in

excluding the evidence that the condemnor would not fence its right of way, and the judgment was affirmed. The court distinguished *St. Louis, K. & N. W. Ry. Co. v. Clark,* 121 Mo. 169, 25 S.W. 192 (Mo.1893), upon the fact there that the condemning party had offered in evidence a stipulation, signed by its engineer, containing an explicit offer to construct and maintain two open crossings for defendants' use not provided by statute (thus making it a matter of record the manner in which the right of way should be used). Here, as in the *Woolfolk* case, respondent did not amend its petition so as to permit appellant's use of the temporary easement areas, and there was no solemn stipulation filed as to that permission. All that there is is witness Hutton's statement that the cross use would be permitted. Under *Woolfolk,* this was error necessitating remand for new trial. See also *Union Electric Company v. Levin,* 304 S.W.2d 478, 483 (Mo.App.1957); and *State ex rel. State Highway Commission v. Stotko,* 365 S.W.2d 64, 66 (Mo.App.1963), relating to error in refusing to permit amendment to the petition taking less than initially sought.

■ Another point requires discussion because it may arise upon new trial. For impeachment purposes, respondent cross-examined appellant's witness, Sweeney, a former Jackson County assessor, as to a tax assessment made by his office of the land value of $225,542.64, as measured against his trial testimony the before taking value was $1,027,000. The tax assessment form was signed by Sweeney's deputy. § 53.060, RSMo 1969, controls in its provision that the assessor is responsible for the official acts of his deputies. The general rule is stated in 81 Am.Jur.2d, Witnesses, § 600, p. 611, "But an instrument in writing which the witness did not execute or authorize is not admissible to impeach him." Some modification of this rule is stated in 98 C.J.S., Witnesses, § 595, p. 581, "A witness may be impeached by showing statements of another, assented to and adopted by him and contrary to his testimony, but not by statements of another for which he is *not*

responsible and which he has not approved or assented to, unless the circumstances required contradiction by him." (Emphasis added.) Although evidence of assessed valuation is generally inadmissible to establish a present fair market value of property, *Kansas City & G. Ry. Co. v. Haake, et al.*, 331 Mo. 429, 53 S.W.2d 891 (1932); *St. Louis Housing Authority v. Gordon*, 382 S.W.2d 451 (Mo.App.1964), there are numerous cases allowing impeachment evidence where a witness, former tax assessor or member of an assessment board, has given testimony contrary to his previous assessment. *Krider v. City of Philadelphia*, 180 Pa. 78, 36 A. 405 (1897); *In re Board of Water Supply*, 73 Misc. 231, 130 N.Y.S. 997 (1911); the dicta in *Edmondson v. Carroll*, 65 S.W.2d 1107 (Tex.Civ.App.1933); *Phillips v. Marblehead*, 148 Mass. 326, 19 N.E. 547 (1889). And see the analogous cases in this state where a former condemnation commissioner has given testimony contrary to his award as initial appraiser: *State ex rel. State Highway Commission v. Meadows*, 444 S.W.2d 225 (Mo.App.1969); and *City of St. Louis v. Worthington*, 331 Mo. 182, 52 S.W.2d 1003 (1932). It should be noted, however, that there are cases disallowing the use of tax assessments for impeachment purposes: *In re U. S. Commission to Appraise Washington Market Co. Prop.*, 54 App.D.C. 129, 295 F. 950 (1924); *Johnson v. Wimsatt v. Reichelderfer*, 60 App.D.C. 186, 50 F.2d 336 (1931); *Darlington Brick & Mining Co. v. Commonwealth*, 407 Pa. 660, 182 A.2d 524 (1962). Under § 53.060, supra, and the cases above first cited, the better rule in this state is that a tax assessor's former assessment may be used to impeach him. And, having ruled, for the purposes of new trial, that the former assessment of Sweeney is admissible for impeachment purposes, the matter comes up of appellant's requested, and refused, withdrawal Instruction No. B: "The evidence of and pertaining to the assessed value of the property is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." This instruction was too broad in that it withdrew the matter *altogether* from the case, and there was no error in refusing it because it did not restrict the consideration of the jury to the impeaching effect of the evidence, and exclude it as to evidence of value. See the *Worthington* case, supra, as to the propriety of an instruction limiting the testimony for impeachment purposes only (eliminating any effect of it as to evidence of value). See also *Johnson v. Minihan*, 355 Mo. 1208, 200 S.W.2d 334, 337[5] (1947); and *State ex rel. State Highway Commission v. Yackel*, 445 S.W.2d 389, 393 (Mo.App.1969). It was the duty of appellant to offer a proper instruction on the subject. *Helming v. Adams*, 509 S.W.2d 159, 167 (Mo.App.1974), and cases cited. Upon retrial, should this evidence be in the case in the same or similar form, appellant may offer a proper withdrawal instruction as to its effect.

The judgment is reversed and the case is remanded for new trial.

All concur.