## Darlington Brick & Mining Company, Appellant, v. Commonwealth.

Argued May 22, 1962. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN and O'BRIEN, JJ.

*Robert L. Orr*, with him *Reed, Ewing, Orr & Reed*, for appellant.

*Raymond L. Brennan*, Assistant Attorney General, with him *Robert W. Cunliffe*, Assistant Attorney General, *John R. Rezzolla, Jr.*, Chief Counsel, and *David Stahl*, Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1962:

The plaintiff, Darlington Brick & Mining Company, appeals from the refusal of the court below to grant a new trial. The case involves eminent domain proceedings. The plaintiff company owns property in South Beaver Township, Beaver County, part of which was taken by the Commonwealth of Pennsylvania for the construction of a state highway. A jury in the court of common pleas returned a verdict in favor of the

plaintiff in the amount of $20,000 which the plaintiff regarded as inadequate and it assigns four reasons for a new trial.

As is customary in trials of this character, the jury was taken to view the premises in litigation. While there, Juror No. 1 accosted C. Emory Miller, president of the Darlington Brick and Mining Company and sought to speak to him. Mr. Miller indicated that he could not enter into conversation with him but stated he would be willing to talk with him after the trial. The juror insisted on conversing and said to Mr. Miller: "This has nothing to do with this case, but I am a trustee of the cemetery which adjoins your land and want to discuss that."

Mr. Miller again specified he would talk with the juror after the trial, whereupon the juror told him of a claim the cemetery organization had against Darlington Brick and Mining Company and that "There may be another lawsuit over that."

The trial judge was not present at this conversation but was informed of it later, at which time the attorney for the plaintiff moved for a withdrawal of a juror with a continuance of the case, or, in the alternative, that Juror No. 1 be dismissed and the trial proceed with eleven jurors.

The trial judge discussed the matter with the involved juror but concluded that "no prejudice to the Plaintiff would be affected by his remaining on the jury." He accordingly dismissed the plaintiff's motion and noted an exception.

By this decision the trial court committed palpable error. Juror No. 1, according to his action and speech, was engaged in a controversy of some kind with one of the parties to the lawsuit before him for deliberation. He stated unequivocally that if the plaintiff corporation did not adjust the claim of the cemetery organization, of which he was a trustee, the cemetery organiza-

tion would enter suit against the plaintiff. From that moment, the plaintiff company became a potential adversary of the juror who thus heard the evidence in the case consciously or subconsciously aware that he would later be entering into litigation against the plaintiff company. In this realization, the juror dropped the cloak of neutrality and became a partisan, which he had absolutely no right to be.

No juror has the right to enter the jury box with a personal ax to grind, a blade to sharpen, or a row to hoe. Every juror must be as neutral as the rays of the sun which light up hill and dale with equal impartiality, he must be as unprejudiced as the falling snow, he must be as unbiased as the angel of truth. Juror No. 1 may have been all these paragons of neutrality, but his actions indicated that he could possibly be prejudiced against one of the parties in litigation because the president of that party failed to talk to him on a subject in which the juror had a personal interest.

A juror should have only one obligation, only one duty, and only one objective, and that is to look always to the Truth, as the needle of the compass points always to the North. And as the compass cannot be affected by the elements, the mind of the juror should not be influenced by thoughts of reward or the infliction of revenge, or, as in this case, by the possible motivation of brandishing threat or menace.

The trial court erred when it allowed a juror with such a demonstrated personal involvement to remain on the jury.* It abused its discretion when it refused to proceed with eleven jurors, especially when both counsel stated they would be satisfied with that solution of the problem.

It would be unnecessary to consider the other reasons advanced by the plaintiff for a new trial except

---

* *Catasauqua Mfg. Co. v. Hopkins*, 141 Pa. 30; *Nyce v. Muffley*, 384 Pa. 107.

that the matter involved in those reasons may arise again in the new trial. The plaintiff argues that the court erred in admitting the testimony of real estate witnesses who had not seen the property in controversy for a period of years. We hold that this was a matter entirely within the discretion of the trial judge and it does not appear that he abused his discretion here.

The appellant complains about the court's charge on compensation for delay in payment. This subject is well covered in *Wolf v. Commonwealth,* 403 Pa. 499, recently decided, and the cases cited therein.

Finally it is argued that the trial court erred in refusing to permit the plaintiff to cross-examine the chief county tax assessor as to the assessed value of the real estate involved after he was offered as an expert witness by the defendant. This subject is covered in *Berger v. Public Park Auth. of Pittsburgh,* 380 Pa. 19, 26-28.

The judgment of the court below is reversed with a venire facias de novo.

Mr. Justice BENJAMIN R. JONES took no part in the consideration or decision of this case.