58 A.3d 102

Thomas BRUCKSHAW, as Administrator of the Estate of Patricia Bruckshaw and Thomas Bruckshaw, In His Own Right as Husband of the Decedent Patricia Bruckshaw, Appellant

v.

The FRANKFORD HOSPITAL OF the CITY OF PHILADELPHIA and The Frankford Hospital of the City of Philadelphia t/a Frankford Hospital Torresdale Division and Frankford Healthcare System, Inc. and Jefferson Health System, Inc. and Brian P. Priest, M.D. and Randy Metcalf, M.D., Appellees.

Supreme Court of Pennsylvania.

Argued March 6, 2012.

Decided Dec. 18, 2012.

136

138

George J. Badey III, Badey, Sloan & DiGenova, P.C., Philadelphia, for Thomas J. Bruckshaw.

David C. Harrison, Philadelphia, for Appellant Amicus Curiae, Pennsylvania Association for Justice.

Medford J. Brown III, Golfein & Joseph P.C., for Frankford Hospital of the City of Philadelphia & Frankford Health Care System, Inc.

Dean F. Murtagh, German, Gallagher & Murtagh, P.C., Philadelphia, for Randy Metcalf and Brian P. Priest.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

This appeal arises in the context of a medical malpractice action brought by Thomas Bruckshaw, (Appellant), as Administrator of the Estate of Patricia Bruckshaw (Decedent) and in his own right, against Frankford Hospital of Philadelphia (Frankford Hospital), Jefferson Health System, Inc., Brian P. Priest, M.D., and Randy Metcalf, M.D. (collectively, Appel-

lees). We granted review of the following issue, as stated by Appellant:

Whether a court is empowered to remove a principal juror without any reason and without any notice to the parties, and replace her with the last possible alternate, again without any notice to the parties, after all evidence was submitted and the jury had already retired to deliberate? *In re Bruckshaw,* 611 Pa. 275, 24 A.3d 860 (2011).

We conclude that the removal of a juror can only be done by a trial court, on the record, with notice to the parties, for cause. We further conclude that the trial court committed reversible error for which the aggrieved party is not required to demonstrate prejudice.

On April 27, 2003, Decedent died following heart valve surgery at Frankford Hospital two days earlier. Dr. Priest was the operating surgeon and Dr. Metcalf was involved in post-operative care. Appellant brought a medical malpractice, wrongful death/survival action against Appellees. Jury selection resulted in 20 jurors: 12 principal jurors and 8 alternate jurors (hereafter, "alternates"). Following jury selection, Appellant's counsel requested the use of a larger courtroom than the trial court usually used to facilitate their use of audio and visual equipment, and the trial court granted the request, moving to another courtroom for the duration of trial.

Somewhat atypically, yet in accord with his usual practice, the trial judge declined information regarding which of the 20 jurors were principals and which were alternates. Moreover, the trial judge did not tell the jurors which of them were principals and which were alternates. Although the trial judge and the jurors were unaware of the identity of the alternates, the parties and a court officer were. In due course, one principal juror was dismissed and replaced with the first chosen alternate, and another of the alternates became unavailable and was dismissed.

At the end of the five-week trial, the principal jurors and the alternates left the courtroom together, and the court officer segregated the principal jurors and released the alter-

nates. Although it is not clear what happened, the parties and the trial court agree that Juror 12 left the courtroom with the jury, but Juror 20 was in her place when the jury returned with its verdict.[1] The removal of the principal juror and replacement with an alternate was apparently done by a court officer, without notice to the parties or the trial court, and no record has ever been developed concerning this incident.

On February 21, 2008, after two days of deliberation, the jury returned to the courtroom with a verdict and Juror 20 identified herself as the foreperson. By a vote of ten to two, the jury found that Frankford Hospital and Dr. Metcalf were not negligent, and that Dr. Priest was negligent, but his negligence was not the cause of Decedent's injuries. The jury was polled, and Juror 20 indicated that she voted with the majority each time. Neither the trial court nor the parties were immediately aware that Juror 20 had replaced Juror 12.

Shortly after the February 21, 2008, delivery of the verdict, Appellant's counsel examined the verdict sheet, observed that it was signed by Juror 20 as jury foreperson, and realized that Juror 20 had been substituted for Juror 12. On February 28, 2008, Appellant moved for post-trial relief in the form of a new trial, arguing, *inter alia*, that an error had occurred when Juror 20 was substituted for Juror 12 without notice to the parties. The trial court refused to grant a new trial and held that because Juror 20 was "acceptable to all parties" as an alternate, Appellant "cannot now complain that [Juror 20] was in the final jury panel." Trial Ct. Op. at 8. The trial court did not shed any light on why the court officer made the substitution. The court confirmed that it was unaware of the identity of the principal jurors and the alternate jurors, and it was the court officer who was responsible for knowing their identity. Although it did not address the juror removal or substitution, it indicated that there was confusion resulting from the use of a different courtroom, stating that "because of this new courtroom, the Court was unable to fit the jury in sequential

---

1. For simplicity, "Juror 12" refers to the twelfth principal juror and "Juror 20" refers to the eighth alternate juror, who was the twentieth juror chosen.

order," and instead "fit the jury panel into the available space." *Id.*

On appeal to the Superior Court, all parties agreed that the court officer wrongly replaced Juror 12 with Juror 20 after trial and either before or during deliberations. However, they disagreed about the effect this error had on the jury verdict. Appellant argued that the replacement of a principal juror with the last selected alternate without notice to the court or parties and without any record evidence concerning the substitution required a new trial. The Superior Court disagreed with Appellant and affirmed the denial of a new trial, focusing on the fact that Juror 20 was accepted as an alternate during jury selection. The Superior Court suggested that to obtain relief on this issue, Appellant would have to prove that the result of the trial would have been different had another alternate juror been selected instead of Juror 20. Because he had failed to meet this burden, the Superior Court held that the seating of Juror 20 was harmless error.

We granted Appellant's petition for allowance of appeal limited solely to the issue of Juror 20's substitution, as stated above. Our standard of review in an appeal analyzing the trial court's decision to deny a new trial is whether the trial court abused its discretion. *See Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116, 1122 (2000). Similarly, the trial court's decision to discharge a juror will not be reversed absent an abuse of discretion. *See Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26, 31 (2005); *Commonwealth v. Jacobs,* 536 Pa. 402, 639 A.2d 786, 790 (1994); *Commonwealth v. Saxton,* 466 Pa. 438, 353 A.2d 434, 435 (1976); see also *In re DeFacto Condemnation & Taking of Lands of WBF Assocs., L.P.,* 972 A.2d 576, 589 (Pa.Cmwlth.2009); *Rural Area Concerned Citizens Inc., v. Fayette Cnty. Zoning Hearing Bd.,* 166 Pa. Cmwlth. 520, 646 A.2d 717, 726 (1994); *Starr v. Allegheny Gen. Hosp.,* 305 Pa.Super. 215, 451 A.2d 499, 506 (1982).

Appellant argues that the removal of Juror 12 and substitution of Juror 20 was reversible error for four reasons. First, there was no adequate reason of record to support the remov-

al of Juror 12. Appellant relies on established precedent that once a principal juror is seated and sworn, that juror cannot be removed without good cause on the record. *See Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 115 (1998) (holding that a trial court may seat an alternate juror whenever a principal juror becomes unable or disqualified to perform his or her duties); *Saxton,* 353 A.2d at 435–36 (providing that the trial court's decision to remove a seated juror must be based on a sufficient record of competent evidence to sustain removal). According to Appellant, there is nothing in the record to indicate that Juror 12 was disqualified or unable to serve. Appellant observes that the trial court offered no explanation for what happened. To the extent the trial court attempted to blame the use of a different courtroom for its confusion about the composition of the jury, Appellant argues that the court's confusion does not explain or excuse what transpired. Therefore, Appellant argues that the court officer's substitution of Juror 20 for Juror 12 without any record support was reversible error.

Although no court has addressed the particular scenario presented by the facts of this case, Appellant forwards support for his position in the decisions of other courts that have awarded new trials when the trial court impermissibly dismissed a principal juror. *See United States v. Hanno,* 21 F.3d 42, 44 (4th Cir.1994); *Hobbs v. United States,* 18 A.3d 796 (D.C.2011); *Hinton v. United States,* 979 A.2d 663, 670 (D.C. 2009); *Grimstead v. Brockington,* 417 Md. 332, 10 A.3d 168, 179 (2010); *Commonwealth v. Connor,* 392 Mass. 838, 467 N.E.2d 1340, 1345 (1984); *Territory v. Prather,* 18 N.M. 195, 135 P. 83, 84 (1913); *People v. Washington,* 75 N.Y.2d 740, 551 N.Y.S.2d 198, 550 N.E.2d 451, 452 (1989); *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995); *State v. Lehman,* 108 Wis.2d 291, 321 N.W.2d 212, 213 (1982).

Second, recognizing that it was not the trial court that exercised its discretion to remove Juror 12, but the court officer, Appellant continues that only the judge has authority to remove a juror. *See State v. Lynn,* 924 S.W.2d 892, 894, 898 (Tenn.1996) (reversing and remanding a case because the

court clerk, not the judge, drew names out of a box to replenish the venire without notice to the parties and not in open court).

Third, assuming *arguendo* there was a legitimate reason to remove Juror 12, Appellant argues that the removal and substitution was reversible error because it occurred without notice to the parties. Fourth, Appellant argues that if there was a reason to support the removal of Juror 12, and he had notice in this regard, he would have insisted that the next available alternate take her seat. Appellant posits that in the course of jury selection, counsel knows that the last alternate juror chosen by the parties has little chance of being seated on the final jury, and counsel will be less likely to reserve peremptory challenges to use on an individual who has almost no chance of serving on the jury. Therefore, Appellant argues that the seating of the last alternate and skipping over all other alternates was reversible error.

Considering these four errors alone or in the aggregate, Appellant argues that we should presume that prejudice resulted. If we do not presume prejudice under these circumstances, where a juror was removed without reason of record by a court officer rather than the judge, without notice to the parties, and was replaced by the last alternate juror, Appellant argues that we would impose an impossible burden on an aggrieved party.

Alternatively attempting to demonstrate harm, Appellant argues that the prejudice that resulted from the trial court's errors is apparent because the wrongly seated alternate juror became jury foreperson, voted with the majority, delivered a defense verdict by the narrowest possible margin (10–2),[2] and therefore was the deciding vote on each question.

2. The Pennsylvania Constitution provides that the General Assembly may provide by law that a verdict may be rendered by not less than five-sixths of the jury in any civil case. PA. CONST. art. 1, § 6. In accordance with this provision, the General Assembly enacted 42 Pa.C.S. § 5104(b), which provides that "[i]n any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." *See Fritz v. Wright,* 589 Pa. 219, 907 A.2d 1083, 1087 (2006).

The Pennsylvania Association for Justice submitted a brief as *amicus curiae* in support of Appellant, recognizing the paucity of authority governing the removal of jurors in civil cases and urging this Court to formalize the rule that removal of a juror can only be done by the court, for cause, with notice to counsel, after an on-the-record proceeding, and that once removed, a juror must be replaced with the next alternate.

Appellees Drs. Priest and Metcalf acknowledge that the record does not disclose how or why Juror 20 was substituted for Juror 12, and assert that the most that can be said of the substitution is that it was a mistake.[3] They argue, however, that this mistake does not entitle Appellant to any relief because one competent and qualified juror may participate in deliberations in substitution for any other competent and qualified juror, without disturbing the sanctity of the jury process or ultimate verdict. They see no difference in a verdict rendered by a jury including Juror 12 and one rendered by a jury including Juror 20 instead. Indeed, according to Drs. Priest and Metcalf, once the twelve principal jurors and eight alternates were chosen, any combination of these individuals was equally qualified to deliberate and deliver a verdict. In support of this argument, they assert that Appellant was not entitled to the services of Juror 12, or of any particular juror. *See Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627, 632 n. 9 (1977) (rejecting a defendant's argument that the trial court erred in striking a juror because she was the sister of a defense witness, and holding that "a defendant is not entitled to the services of any particular juror."). Finally, consonant with their ongoing theme, Appellees argue that there is no support for Appellant's assertion that he was entitled to notice or a record proceeding before Juror 12 was dismissed and replaced by Juror 20.

Because Appellees view the juror substitution as a harmless mistake, they argue that "any error found could not be considered harmful if it is not the product of improper judicial intervention since there would not be any impropriety to

3. Drs. Priest and Metcalf filed a joint brief, and Frankford Hospital filed its own brief.

absolve." Brief of Drs. Priest and Metcalf at 23. They continue that only when the fundamental qualities of competence, fairness, and impartiality are impugned should an appellate court conclude that the trial court has committed a palpable abuse of discretion. *See Commonwealth v. Pittman*, 320 Pa.Super. 166, 466 A.2d 1370, 1374 (1983) (holding it "is only when the court permits the [jury] selection process to impugn the fundamental qualities of competence, fairness and impartiality that we may conclude that a 'palpable abuse of discretion' has been committed."). Appellees do not believe that Appellant can demonstrate prejudice because, as described above, he received the service of an impartial jury of twelve chosen by the parties. *See Abu–Jamal*, 720 A.2d at 115 (holding that the appellant failed to demonstrate how he was prejudiced by the trial court's removal of a juror for impermissible behavior because the juror had expressed open hostility towards the appellant); *Lockley v. CSX Transp., Inc.*, 5 A.3d 383, 392 (Pa.Super.2010) ("a party aggrieved by a trial court's erroneous decision to strike a juror for cause must establish prejudice in order to be granted relief in the form a new trial.").

Finally, Appellees distinguish all of the out-of-state cases relied upon by Appellant on their facts, and offer several other out-of-state cases that they argue demonstrate that it is not reversible error when a court mistakenly permits an alternate juror to act as a principal juror. *See United States v. Hamed*, 259 Fed.Appx. 377 (2d Cir.2008); *U.S. v. Levesque*, 681 F.2d 75 (1st Cir.1982); *People v. Jeanty*, 94 N.Y.2d 507, 706 N.Y.S.2d 683, 727 N.E.2d 1237 (2000); *State v. Gentry*, 125 Wash.2d 570, 888 P.2d 1105 (1995).

## I. Validity of Juror Substitution

 We begin our analysis by recognizing that the right to a trial by an impartial jury is enshrined in the Pennsylvania Constitution, *see* Pa. Const. art. I, § 6, which guarantees that "trial by jury shall be as heretofore, and the right thereof remain inviolate." *See Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271, 272–73 (1968) (construing "inviolate" as

used in this section to mean "freedom from substantial impairment," and explaining that the "cardinal principle is that the [e]ssential features of trial by jury as known at the common law shall be preserved."); 42 Pa.C.S. § 5104(a) ("Except where the right to trial by jury is enlarged by statute, trial by jury shall be as heretofore, and the right thereof shall remain inviolate."). The right to a jury trial in a civil action is a fundamental aspect of our system of law. *See Siskos v. Britz,* 567 Pa. 689, 790 A.2d 1000, 1006 n. 4 (2002).

One of the reasons this case is before us is our recognition that neither the rules of civil procedure nor our case law in the civil arena are as developed with respect to the question before us as are criminal rules and cases. Issues involving jury irregularity have most often arisen in the criminal context, rather than civil. Although we review with closer scrutiny certain criminal issues where liberty is at risk, the fairness and impartiality of a jury are as scrupulously protected in a civil case as in a criminal case. *See, e.g., Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 604 A.2d 1010, 1015 (1992) (relying on criminal cases to resolve a question of extraneous influence on a civil jury and observing that "the commitment to fairness should be the same in criminal and civil trials."); *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733, 734 (1983) (unifying conflicting rules about communication between a judge and jury that arose in criminal and civil contexts, explaining "we see no reason to apply different rules in civil and criminal cases."); *United States v. Harry Barfield Co.,* 359 F.2d 120, 124 (5th Cir.1966) ("the integrity of the jury system is no less to be desired in civil cases."). Moreover, the constitutional right to a jury trial, as set forth in PA. CONST. art. 1, § 6, does not differentiate between civil cases and criminal cases. Thus, on the narrow issue before us, notwithstanding that there may be distinctions in criminal and civil cases, our holdings in criminal cases concerning the removal or substitution of jurors are persuasive in the civil context, and we think it is appropriate to look to the more developed criminal law for guidance. Indeed, the parties share this recognition, as they each rely on various criminal cases.

■ One of the most essential elements of a successful jury trial is an impartial jury. *Colosimo v. Pennsylvania Elec. Co.*, 513 Pa. 155, 518 A.2d 1206, 1209 (1986) ("The impartiality and integrity of the jury are critical to the properly functioning [sic] of our system. Indeed, the jury is its keystone.") As we have explained:

It has been said that the greatest object of civil government is to get twelve honest men in the jury box. If this is true, after they get there they must be kept there, hedged around not only with their own integrity, but with every precaution against evil communication which may corrupt them; and when they go to their room to deliberate upon an issue in which is involved the life, liberty or property of their fellowman, their conduct in the discharge of such solemn duty must comport with it, else confidence in the system which is the best achievement of civilization will be lost.

*Mix v. North American Co.*, 209 Pa. 636, 59 A. 272, 274–75 (1904); *see also Remmer v. United States*, 350 U.S. 377, 382, 76 S.Ct. 425, 100 L.Ed. 435 (1956) ("[I]t is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.").

To this end, we go to great lengths to protect the sanctity of the jury. Through the *voir dire* process individuals with bias or a close relationship to the parties, lawyers or matters involved are examined and excluded. *Colosimo*, 518 A.2d at 1209; *see also* Pa.R.C.P. 220.1–221 (regarding *voir dire* and peremptory challenges in civil trials); Pa.R.Crim.P. 631–635 (regarding the impaneling of a jury in a criminal trial). Once chosen, jurors take an oath to decide the case based only on the evidence. *Colosimo*, 518 A.2d at 1209; *Commonwealth v. Banmiller*, 393 Pa. 496, 143 A.2d 56, 57 (1958). Jurors are customarily instructed not to discuss the case with anyone and to avoid contact with media covering the case. *Colosimo*, 518 A.2d at 1209. They may be sequestered for the duration of the trial, at Commonwealth expense, and insulated from the influence of the outside world. *Id.* In appropriate cases, a

party who doubts that an unbiased jury can be found in the county where the suit is filed may move for a change of venue to another county. *Id.;* Pa.R.C.P. 1006(d)(2); Pa.R.Crim.P. 312.

In addition, contact between jurors and other parties, court officers, lawyers and judges is viewed with disfavor. *Colosimo,* 518 A.2d at 1209. It is a crime for any person to contact a juror to influence his vote in a case, 18 Pa.C.S. § 5102, or to eavesdrop on the jury's deliberations. 18 Pa. C.S. § 5103. Both legal and judicial codes of ethics proscribe *ex parte* contact with jurors. Rule 3.5 of the Pennsylvania Rules of Professional Conduct, Pa.R.P.C. 3.5; Canon 3A(4) of the Code of Judicial Conduct. Moreover, jurors may not be questioned as to their deliberations after the verdict has been rendered. *Carter,* 604 A.2d at 1013 (holding that a juror is incompetent to testify about what occurred during deliberations); *Commonwealth ex rel. Darcy v. Claudy,* 367 Pa. 130, 79 A.2d 785, 786 (1951); *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

The Rules of Criminal Procedure permit a trial court to direct a reasonable even number of jurors to be called and impaneled to sit as alternate jurors, Pa.R.Crim.P. 633(A), and direct that alternate jurors must be examined, challenged, and selected in the same manner as the principal jurors. Pa.R.Crim.P. 633(C). "Alternate jurors, in the order in which they are called, replace principal jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Pa.R.Crim.P. 645(A). Additionally, "[a]n alternate juror who does not replace a principal juror shall be discharged before the jury retires to consider its verdict." Pa.R.Crim.P. 645(B). After an alternate juror is discharged, he or she may not be recalled to replace a principal juror who becomes unable to serve. *See Commonwealth v. Saunders,* 454 Pa.Super. 561, 686 A.2d 25, 27 (1996) (holding that replacing a principal juror with an alternate juror after deliberation had begun, over defense objections, was plain error).

The decision to remove a juror because of inability to perform the usual functions and to seat an alternate juror is within the sound discretion of the trial court. *Commonwealth v. Williams*, 554 Pa. 1, 720 A.2d 679, 684 (1998); *Commonwealth v. Jacobs*, 536 Pa. 402, 639 A.2d 786 (1994); *Rural Area Concerned Citizens, Inc.*, 646 A.2d at 725–26; *Saxton*, 353 A.2d at 436. This discretion exists even after the jury has been impanelled and the juror sworn. *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 70 (1994). The trial court's discretion in this regard must be based upon a sufficient record of competent evidence to sustain removal. *Saxton*, 353 A.2d at 436. *See also United States v. Cameron*, 464 F.2d 333, 335 (3d Cir.1972) (holding that "the common thread of the cases is that the trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired.").

We have held that when there is no evidence to support the trial court's decision to remove a juror, the court has abused its discretion. *Saxton*, 353 A.2d at 436. The trial court in *Saxton sua sponte* and without notice to the parties questioned a juror about whether he was ill, on medication, and paying attention, and further asked a doctor to sit in the courtroom to observe the juror's conduct. The trial court ultimately decided to remove the juror because, in the court's opinion, the juror displayed "indicia of being an addict." *Id.*, 353 A.2d at 436. On appeal, we applied the predecessor to Rule 645, Pa.R.Crim.P. 1108(a), and held that the trial court abused its discretion in removing the juror because "there [was] no competent evidence in the record to support the conclusion that Juror No. 6 was unable to perform as a juror because of drug use." *Id.* at 436; *see also Darlington Brick & Min. Co. v. Commonwealth*, 407 Pa. 660, 182 A.2d 524 (1962) (reversing the trial court's decision not to dismiss a juror where the record did not support the decision and instead demonstrated that the juror was a potential adversary of the plaintiff). On the other hand, where the trial court's decision

to remove a juror is supported by record, we will defer to that decision on appeal. *See Abu–Jamal,* 720 A.2d at 115; *Williams,* 720 A.2d at 684; *Carter,* 643 A.2d 61; *Commonwealth v. Jerry,* 485 Pa. 95, 401 A.2d 310 (1979); *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977).

 Therefore, when a trial court is faced with a juror who is potentially incapacitated, the court is tasked with determining whether the juror is unable to perform. When the court determines that the juror is disqualified or unable to serve, the record must support the finding. Like *Saxton,* the record in this case is devoid of any evidence that Juror 12 was disqualified or unable to serve. When Appellant moved for post-trial relief, requesting a mistrial because of the seating of Juror 20 in Juror 12's place, the trial court denied the request without explaining what happened or why.[4] If we were faced solely with the question of whether the trial court abused its discretion in removing Juror 12, we would conclude that it did, because there is nothing in the record that indicates Juror 12 was unable to serve. *Saxton,* 353 A.2d at 436.[5]

The unique facts of this case, however, add several other troubling aspects, as argued by Appellant. First, the removal was effectuated by a court officer, not the trial court, leaving the court apparently unaware of what transpired until the substitution was brought to its attention by Appellants after the verdict, and unable to remediate the error in any way other than the award of a new trial. If the court officer had communicated with the trial court at the time he made the

4. The trial court attempted to explain what occurred by stating because counsel requested the use of a different court room, the trial court was unable to fit the jurors in sequential order. Trial Ct. Op. at 8–9. This explanation, however, sheds no light on what happened. As long as there were a sufficient number of seats for all jurors, the trial court could have seated them in sequential order.

5. In *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627, 632 n. 9 (1977), we noted that "a defendant is not entitled to the services of any particular juror," a statement on which Appellees herein rely. This principal is not in dispute. Although litigants are not entitled to the services of a particular juror, they are entitled to have the trial court reasonably exercise its discretion in deciding to remove a juror and to have that decision supported by the record.

juror substitution, the court could have provided notice to the parties, investigated the circumstances, and rendered a determination on the record as to whether Juror 12 was unable to serve. *See Commonwealth v. Elmore*, 508 Pa. 81, 494 A.2d 1050, 1053 (1985) (holding that the tipstaff should have reported the jury's request for transcripts to the judge who in turn would have consulted with both attorneys on the record). Moreover, as we have explained, the court officer's responsibilities are properly limited to "logistics and purely ministerial functions, such as escorting the jury in and out of the courtroom." *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 312 (2010). Communication with a juror that results in the juror's removal and the substitution of an alternate is clearly beyond the court officer's bailiwick.

Second, the substitution was completed without notice to the parties or an opportunity to explore or contest whether Juror 12 was able or unable to serve. We have strictly prohibited communication between the court and jury other than in open court and in the presence of counsel for both parties. *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733, 734 (1983); *Glendenning v. Sprowls*, 405 Pa. 222, 174 A.2d 865, 867 (1961) ("We strongly condemn any intrusion by a Judge into the jury room during the jury's deliberations, or any communication by a Judge with the jury without prior notice to counsel, and such practice must be immediately stopped!"). Had the trial court notified the parties of the possible removal of Juror 12, trial counsel would have had the opportunity to be heard in open court or, at the very least, decide whether to object to the removal and obtain an explanation from the trial court on the record.

Third, Juror 12 was not replaced with the next alternate in line, but with the last chosen alternate. The process by which the principal jurors and alternate jurors are chosen is crucial to the preservation of the right to an impartial jury. *See Commonwealth v. Ellison*, 588 Pa. 1, 902 A.2d 419, 423 (2006); *Commonwealth v. Ingber*, 516 Pa. 2, 531 A.2d 1101, 1102 (1987). In civil cases, each party is generally entitled to four peremptory challenges, although the trial court may allow

additional peremptory challenges, which are exercised alternately between the parties, *see* Pa.R.C.P. 221, and must be used immediately after a juror's examination. *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A.2d 50, 54 (1966). The primary function of a peremptory challenge is to allow parties to strike prospective jurors whom they have good reason to believe might be biased but who are not so clearly and obviously partial that they could otherwise be excluded from the panel. *Commonwealth v. Phillips*, 411 Pa.Super. 329, 601 A.2d 816, 820 (1992), *aff'd*, 534 Pa. 423, 633 A.2d 604 (1993). Although there are no applicable rules regarding the substitution of alternate jurors in civil cases, in criminal cases, if a juror is replaced, it must be by the next alternate. Pa.R.Crim.P. 645.

The procedure of Rule 645 is salutary because it is compatible with the reality of jury selection. As the number of alternates increases, the number of remaining peremptory challenges decreases. As a strategic matter, counsel may decide, as the number of available peremptory challenges decreases, to accept jurors with unappealing characteristics or make compromises about who is an acceptable juror. *See, e.g., Hopp v. City of Pittsburgh*, 194 F.3d 434, 440 (3d Cir. 1999) (attorney with plan to strike jurors with certain characteristic could decide, as peremptory challenges dwindled, that it was more important to strike juror who lacked the characteristic but seemed unappealing for some other reason). Additionally, the parties have little reason to save their peremptory challenges for the last alternate chosen because there is only a small chance of the last alternate juror deliberating with the jury.

We have no record to assess why Juror 20 was called instead of the next sequential alternate. Choosing an alternate arbitrarily, rather than in order, calls into question the decision to choose one alternate over another. Indeed, the first principal juror who was removed was replaced with the first alternate; that the next substitution was not in order is certainly troubling.

We therefore hold that the removal of a juror can only be done by a trial court, on the record, in open court, with

notice to the parties, for cause. We find nothing in the record in this matter to support the removal of a presumptively competent juror, by a court officer, without notice to the court, without notice to the parties, and then to substitute the last alternate juror rather than the next chosen juror in sequence. Thus, the question becomes whether the trial court's errors require a new trial. As described above, Appellees advocate that we should require a showing of prejudice, while Appellant advocates that we should presume prejudice, and grant a new trial.

## II. Presumption of Prejudice

■ We agree with Appellant. It is our duty to ensure a fair trial and protect the integrity of the jury. We cannot do so if we impose the impossible burden of requiring a showing of prejudice. Indeed, the inability to assess prejudice in this case causes the error to defy analysis by prejudice standards; to hold otherwise would immunize such jury irregularities from review.[6] In such a situation, to protect the integrity of a jury verdict, a new trial must be granted.

■ The removal of a presumptively competent juror, by a court officer, without notice to the court, without notice to the

6. The breakdown in the integrity of the jury that occurred in this case is suggestive of structural error for which, in certain criminal contexts, prejudice is presumed. *See Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (defining a structural error as one "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."); *Rose v. Clark*, 478 U.S. 570, 587, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (Stevens, J., concurring) (recognizing that "certain constitutional rights are not, and should not be, subject to harmless-error analysis because those rights protect important values that are unrelated to the truth-seeking function of the trial."); *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 538 n. 6 (2009) (recognizing that this Court has presumed prejudice where a constitutional error has caused a total failure in the relevant proceeding). These limited circumstances involving structural errors include the right to counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); the right to a unanimous jury verdict beyond a reasonable doubt, *see Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); and the right to represent one's self, *see McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

parties, and the substitution with the last alternate juror is so inimical to the integrity of our jury system that the presumption of prejudice arising therefrom is conclusive. In this respect, our decision in *Saxton* is particularly instructive, as this Court remedied the trial court's abuse of discretion for removing a juror without adequate support in the record by reversing and remanding for a new trial. *Saxton,* 353 A.2d at 436. We did not examine whether the defendant suffered any prejudice. *Id.*

 Moreover, in the analogous situation of *ex parte* communication involving the jury, upon which courts look with suspicion, if such communication is had, and is not explained satisfactorily on the record, it will, in itself, be grounds for a new trial. *Colosimo,* 518 A.2d at 1211 (quoting *Printed Terry Finishing v. City of Lebanon,* 247 Pa.Super. 277, 372 A.2d 460, 471 (1977)). We have also presumed prejudice and reversed criminal convictions because of improper contact with the jury, even without certainty that any improper prejudicial information had actually been communicated to the jurors. *See Commonwealth v. Bobko,* 453 Pa. 475, 309 A.2d 576, 577 (1973) (presuming prejudice and reversing conviction because jury received a trial booklet indicating that the defendant was under indictment for unrelated charges where there was no evidence that any jurors had read the booklet); *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303, 304 (1972) (presuming prejudice and reversing conviction because the victim's father had been on the panel of jurors from which the trial jury was selected where there was no evidence that he had communicated with any of the trial jurors).[7]

Because this case involves a presumptively competent juror who was removed by a court officer, without notice to the

7. *See also United States v. Olano,* 507 U.S. 725, 738, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("There may be cases where an [outside] intrusion [upon the jury] should be presumed prejudicial."); *Turner v. Louisiana,* 379 U.S. 466, 474, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (presuming prejudice and reversing conviction where two prosecution witnesses who were deputy sheriffs freely mingled and conversed with the jury, notwithstanding the lack of evidence that the deputies had discussed the case with the jurors); *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("In a criminal case, any

court, without notice to the parties, and replaced with the last alternate juror, this case is dissimilar from those cases where we have required a showing of prejudice resulting from jury irregularities. In such cases, which usually arise in the context of unauthorized contact with or influence of the jury, requiring a showing of prejudice is congruous with our deference to the exercise of trial court discretion in the first instance, where the trial court assesses the prejudicial impact of the error based on competent testimony. *See, e.g., Carter,* 604 A.2d at 1016 ("Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence."); *Colosimo,* 518 A.2d at 1210 (requiring an assessment of prejudice resulting from unauthorized contact with the jury as consistent with the trial court's discretion to grant a new trial where justice so requires).

We have therefore deferred to the trial court's discretionary finding of no prejudice based on competent record evidence in situations where there was unauthorized contact with the jury or a juror by counsel, *Colosimo,* 518 A.2d at 1210, by the trial court, *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733, 734 (1983),[8] or by bystanders in the courtroom, *Commonwealth v. Craig,* 471 Pa. 310, 370 A.2d 317, 319 (1977). Such

> private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is ... deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.").

8. In *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733, 739 (1983), we eliminated a presumption of prejudice in a case involving unauthorized contact between a judge and the jury. Before *Bradley,* any *ex parte* contact between a juror and the trial court, no matter how innocuous, required a new trial. *See Argo v. Goodstein,* 424 Pa. 612, 228 A.2d 195 (1967). In *Bradley,* however, we overruled *Argo* to require the moving party to show "[a] reasonable likelihood of prejudice." *Bradley,* 459 A.2d at 739. *See also Colosimo,* 518 A.2d at 1210. We explained that the reason for the prophylactic rule prohibiting *ex parte* communications is to prevent the court from unduly influencing the jury and to afford counsel the opportunity to be aware of any communications and seek to correct any error that may occur. *Colosimo,* 518 A.2d at 1211. Where there is no showing that the court's action

cases have in common notice to the parties, and the trial court's exercise of discretion, in open court, based on facts of record. *See Commonwealth v. Treiber*, 582 Pa. 646, 874 A.2d 26, 31 (2005) (rejecting contention that trial court abused its discretion in refusing to dismiss a seated juror who violated the court's sequestration rules where the trial court conducted an *in camera* hearing and made credibility determinations about the juror's conduct); *Commonwealth v. Crispell*, 530 Pa. 234, 608 A.2d 18 (1992) (holding that a reporter's call to two jurors was not prejudicial, as the trial court questioned the jurors in chambers with counsel and determined that the contact was innocuous); *Morrissey v. Com., Dept. of Highways*, 440 Pa. 71, 269 A.2d 866 (1970) (holding that while a witness's comments to a juror may warrant a mistrial, this determination depends on the trial court's exercise of discretion in the first instance; where the trial court took steps to adequately assess and ameliorate any potential for prejudice, there is no reversible error).[9] We have likewise deferred to the trial court's finding of prejudice where the trial court solicited an explanation for the unauthorized contact, exercised its discretion to discern prejudice, and the record supported the trial court's finding. *Colosimo*, 518 A.2d at 1212.[10]

influenced the jury, however, or that the information provided to the jury was erroneous, we held that the reason for the prophylactic rule dissolved. *Bradley*, 459 A.2d at 738 (quoting *Yarsunas v. Boros*, 423 Pa. 364, 223 A.2d 696, 698 (1966) (Bell, J., dissenting)). Importantly, we also warned the trial bench that "failure to maintain an accurate and reviewable contemporaneous record of all instructions and communications between the court and a jury may force an implication of prejudice where arguably none exists." *Bradley*, 459 A.2d at 739.

9. *See also Lockley v. CSX Transp. Inc.*, 5 A.3d 383 (Pa.Super.2010) (affirming trial court's holding that no prejudice arose from the court's erroneous decision to strike a juror for cause); *In re DeFacto Condemnation and Taking of Lands of WBF Associates, L.P.*, 972 A.2d 576, 589 (Pa.Cmwlth.2009) (deferring to the trial court's assessment of no prejudice arising from a sleeping juror); *Gorski v. Smith*, 812 A.2d 683, 713 (Pa.Super.2002) (affirming finding of no prejudice when the trial court discovered that a juror may have observed inappropriate conduct by counsel, took swift action to forestall any potential prejudice to the jury by questioning the juror, in the presence of both attorneys, and ultimately dismissed her).

10. We have, however, reversed the trial court's finding of no prejudice where it was unsupported by the record. *See Commonwealth v. Mosley*,

 The mischief of uncertainty is what distinguishes this case from those where we have required a showing of prejudice. Although appellate courts will generally defer to the trial court's exercise of discretion in determining whether there was prejudice, where there is no exercise of discretion, there is nothing to which to defer.[11] In this respect we readily acknowledge the case law relied upon by Appellees and find it distinguishable, because each case involved an exercise of trial court discretion, on the record, with notice to the parties. For example, in *Lockley*, 5 A.3d at 383, the trial court erroneously struck a juror for cause and determined no prejudice arose from this error. The Superior Court affirmed, holding that although "a party aggrieved by a trial court's erroneous decision to strike a juror for cause must establish prejudice in order to be granted relief in the form a new trial," *id.*, at 392, as the trial court found, the appellant did not suffer prejudice because, *inter alia*, the trial court's error did not, as the appellant argued, grant the appellee an extra peremptory challenge. The case before us, however, does not involve a trial court erroneously striking a juror for cause, on the record, in the presence of counsel. It is precisely the unknown, opaque nature of the facts before us that calls into

535 Pa. 549, 637 A.2d 246 (1993) (holding that when there is contact between a juror and a witness, prejudice may be inferred at the discretion of the trial judge, but the judge's failure to question a juror about possible prejudice is an abuse of discretion requiring a new trial); *Carter*, 604 A.2d at 1018 (reversing the trial court's grant of a new trial based on its finding that media broadcasts prejudiced the jury, because the media broadcasts did not provide new information to the jury, the trial court adequately instructed the jury not to be influenced by anything other than the evidence and the law of the case, and there was, therefore, "no reasonable likelihood of prejudice arising from the instant broadcast.").

11. The Dissenting Opinion suggests that Appellant overlooked an opportunity to object and remedy the juror substitution that occurred in this case when Juror 20 delivered the verdict. At this point in the trial, however, the error had already occurred: Juror 12 was dismissed and Juror 20 was seated in her place two days before the return of the jury's decision. Similarly, although the Dissent faults Appellant for failing to develop a record with respect to the removal of Juror 12 and substitution with Juror 20, by the time there was a viable opportunity to raise this issue, the error was not subject to being remedied by a factual explanation.

question the integrity of the jury far more than an erroneous decision made on the record in open court.

Similarly, in *Abu–Jamal,* a juror left sequestration against the trial court's order. 720 A.2d at 114. When she returned, the trial court held a conference in chambers with counsel, where counsel concurred with the trial court's decision to remove the juror, apparently because this juror had previously expressed dislike for the appellant. *Id.* at 114–15. When the appellant challenged the trial court's removal of the juror before this Court, we rejected the claim, relying on the trial court's reasonable determination that the particular juror's defiant misbehavior threatened the integrity of the jury and upholding the trial court's exercise of discretion in this regard. *Id.* We further observed that the appellant did not demonstrate that he was prejudiced by the removal because the particular juror had expressed hostility to the appellant. *Id.* at 115. Our observation in this regard was relevant only because *Abu–Jamal* was an appeal from a petition for post-conviction relief, *see* 42 Pa.C.S. § 9541–9551, which requires a showing that the conviction resulted from certain violations enumerated in the Post–Conviction Relief Act, 42 Pa.C.S. § 9543(a)(2).

■■■ We recognize that granting a new trial is an extreme remedy, but one that is necessary under the circumstances to ensure the integrity of jury trials in Pennsylvania. Because of the obscure nature of the removal and substitution, without notice to the parties and off the record, we cannot discern the cause of this jury irregularity. It is this uncertainty that causes us to impose the remedy of a new trial, to protect the sanctity of the jury from innocent mistakes as well as iniquitous intentions. To the extent the Superior Court decision has opened the door to the tampering of the jury system, we emphatically close it. The order of the Superior Court is respectfully reversed and the case is remanded for a new trial.[12]

12. Although Appellant requests a new trial before a different judge, he offers no support for this request, and we see no reason to grant it.

Justice ORIE MELVIN did not participate in the decision of this case.

Justices SAYLOR, TODD and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice EAKIN files a concurring and dissenting opinion.

Chief Justice CASTILLE, concurring.

I join Part I of the Majority Opinion, and concur in the result the majority achieves. I would, however, stress the subtle but important point that, in assessing the "error" or "errors" of the trial judge here, there is error in the juror substitution only insofar as the court officer's actions here are attributable to the trial court; it is only for that reason that we may properly consider whether the trial court's errors, in the multiple, "require a new trial." Majority Op. at 154, 58 A.3d at 113. Of course, trial jurists are no more omniscient than appellate jurists; it is the trial court's post-verdict reaction to the juror substitution issue, once the fact became known, that is the actually erroneous decision in this case, since the court and the parties apparently were unaware of the court officer's actions until after the verdict was rendered. Moreover, because I believe Part I of the Majority Opinion adequately disposes of the issue before us, I do not join Part II of the opinion.

Justice EAKIN, concurring and dissenting.

I agree generally with the majority's holding that a juror can only be removed by the trial court, on the record, with notice to the parties, and for cause. If there are exceptions to this rule, they are not presented to us here. I do not agree with the majority's conclusion that, as prejudice cannot be demonstrated, a new trial must be the remedy, or that "[t]he mischief of uncertainty is what distinguishes this case from those where we have required a showing of prejudice." Majority Op., at 158, 58 A.3d at 115–16.

There is uncertainty because there is no record, and there is no record because appellant failed to request a hearing for the purpose of determining what happened and why. Under the majority's pronouncement, the absence of a record results in victory for the very party who bears the burden of creating one. If the absence of a record absolves the losing litigant of the burden of proving prejudice, the losing party will never want to make a record.

It may be that a hearing would have revealed little, and conversely, it may have revealed a lot.[1] It may have revealed matters with relevance beyond this case, for as the majority properly notes, "we cannot discern the cause of this jury irregularity." *Id.*, at 159, 58 A.3d at 116. Indeed, we cannot tell if there were nefarious or innocent motivations, or any motivations at all. At the very least, a hearing would avoid reviewing courts having to speculate about the specifics of what "apparently" happened, whether a postulated but unverified "court officer" actually "made the substitution," or whether it was done by the jurors themselves. These are factual speculations on which pronouncements of legal principles should not be based.

I cannot support "distinguishing" this case so as to excuse the absence of prejudice we would otherwise require, on the basis of an incomplete record, when the very reason for that incomplete record lies at the feet of the party who is rewarded thereby. The majority's holding that a new trial is appropriate when there is no record provides every incentive to the complaining party to maintain the "mischief of uncertainty"— we should not award a new trial in such circumstances absent a showing of actual prejudice resulting from the substitution. In the end, a hearing may have led to a new trial, but such a

---

1. The record also lacks an explanation of why appellant was excused from the normal penalties of waiver. Without a hearing, no analysis exists that would excuse the want of a timely objection to the interloping foreman before the verdict was announced and recorded, beyond the acknowledgement that "no one noticed." There were complications of seating that made it more difficult to keep track of which juror was which, but the relative difficulty of executing a duty does not excuse that duty. Surely we cannot endorse the concept that *no one* had an obligation to pay attention before the jury was excused.

result should not be the de facto result of appellant avoiding that hearing. As such, I must dissent.