**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS ARROYO-LABOY | : | |
| | : | |
| Appellant | : | No. 1562 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 18, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000160-2023

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 28, 2026**

Appellant, Carlos Arroyo-Laboy, appeals from the judgment of sentence entered on September 18, 2024, in the Criminal Division of the Court of Common Pleas of Lebanon County.  We affirm.

The trial court summarized the facts and procedural history of this case as follows.

> On January 5, 2023, State Parole Officer (SPO), Justin Stehr (hereafter SPO Stehr), conducted a home visit at Appellant's residence.  Appellant was on state parole under SPO Stehr's supervision at the time.  Previously, SPO Stehr had been unable to contact Appellant because no one would answer the door at Appellant's residence when home visits were attempted.  At the time, Appellant was subject to maximum level supervision, as he had past parole violations involving firearms and he had tested positive twice for cocaine and opiates.
>
> While in Appellant's residence, SPO Stehr observed a black, hard plastic box with a Glock handgun logo on it.  Thereafter, SPO Stehr contacted the Lebanon City Police Department to request assistance in conducting a search of Appellant's residence.  During

a search of the basement area, bullets, Glock accessories, and a 9mm Glock handgun (together with a magazine) were discovered. A further search of Appellant's residence uncovered 31 grams of marijuana, rolled-up dollar bills coated with suspected cocaine, suspected cutting agents, twenty (20) grams of heroin, six (6) grams of powdered cocaine, fourteen (14) grams of crack cocaine, and forty-eight (48) baggies of suspected heroin.

On February 27, 2023, Appellant was charged with multiple offenses. An amended criminal information was thereafter filed on March 31, 2023, and a second amended criminal information was filed on February 24, 2024. Sixteen (16) counts were listed in the second amended criminal information, including felony counts of possession of controlled substance, and person not to possess, use, manufacture, control, sell, or transfer firearms, and eight (8) misdemeanor counts of simple possession of a controlled substance.

Numerous pretrial motions were filed, and the trial court granted extensions and continuances. At the conclusion of a [two-day] trial that commenced on June 26, 2024, the jury found Appellant guilty of fourteen (14) offenses. On September 18, 2024, the trial court ordered Appellant to serve 15-30 years in prison. Appellant filed a notice of appeal on October 22, 2024[1] and, thereafter, a

---

[1] In response to a rule to show cause, Appellant explained that the trial court sentenced him on September 18, 2024, and that he, through the statewide electronic filing system known as PACfile, timely filed his notice of appeal on October 18, 2024, precisely 30 days after the imposition of sentence. *See* Appellant's Response to Show Cause Order, 2/8/25, at 1-2 (unpaginated) ¶¶ 4-7; *see also* Pa.R.A.P. 903(c)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court.").

The clerk of courts rejected Appellant's electronic filing, however, explaining in its rejection notice that privately-retained counsel needed to file notices of appeal together with filing fees for the Superior Court and the clerk of courts. *See* Appellant's Response to Show Cause Order, *supra* at Exhibit C. Appellant's counsel thereafter refiled the notice of appeal on October 22, 2024. Clerks of court do not have the authority to reject a timely filing as defective. *See*, *e.g.*, *Commonwealth. v. Williams*, 106 A.3d 583, 589 (Pa. 2014) (holding that Commonwealth's notice of appeal was timely filed where

*(Footnote Continued Next Page)*

concise statement of errors complained of on appeal pursuant to an order issued by the trial court.

Trial Court Opinion, 01/07/25, at 2-4.

On appeal, Appellant raises the following issues for our review.

1. Whether the trial court erred in removing a principal juror during trial over the defense objection and without conducting any inquiry regarding the juror's particular fitness and competency to continue their service?

2. Whether the trial court erred in permitting the Commonwealth to introduce unauthenticated and inadmissible evidence of uncharged criminal conduct, namely photographs and videos of drug activity, without appropriate pretrial notice in accordance with Rule 404(b) of the Pennsylvania Rules of Criminal Procedure?

3. Whether the trial court erred in precluding the defense from presenting testimony and evidence of third-party guilt and further prohibiting the jury from seeing the witnesses called to testify and assert[ing] their 5th Amendment privilege?

Appellant's Brief at 3.

In his first issue, Appellant claims that the trial court abused its discretion in removing a principal juror during trial proceedings, over the defense objection, and without conducting a sufficient on-the-record inquiry to establish the juror's lack of fitness and competency to continue service. **See** Appellant's Brief at 3 and 7. Appellant contends that "[t]he removal of a juror can only be done by a trial court, on the record, in open court, with notice to the parties, for cause." **Id.** at 13. Despite this duty, the trial court

Commonwealth filed notice of appeal within time limit but prothonotary's office did not docket notice due to defect in filing). As such, we shall treat the rejection of Appellant's timely notice of appeal as a breakdown in court operations and exercise jurisdiction over this appeal.

- 3 -

removed a juror "without developing any record as to whether anyone else had observed this juror, how long had he been supposedly 'kind of dozing,' and during which presentation of testimony, if any." *Id.* at 14. Appellant asserts that, "without any record to support the trial court's summary removal decision, there is little [evidence this Court can review to determine] whether the trial court properly exercised its discretion" and he is entitled to a new trial on remand. *Id.* at 16.

On the first day of trial, as the Commonwealth proceeded with its direct examination of Sgt. Patrick McKinney, Jr. of the Lebanon City Police Department, the trial judge announced, on the record in open court, that the court proceedings would stand in recess for 20 minutes. N.T. Jury Trial, 6/26/24, at 65. The recess was announced after the judge learned from a courtroom officer that a juror had been observed sleeping during the Commonwealth's examination of Sgt. McKinney. *Id.* at 66. The court explained that a morning recess would be taken to allow the jurors to get some fresh air. *Id.* While still on the record, the court pointed out that the jurors were obligated to pay attention to the testimony of the witnesses and review the exhibits. *Id.* If the panel members were incapable of performing these tasks, the court explained, then they should advise the tipstaff. *Id.* The court admonished the jury that if a juror fell asleep again, that juror would be removed. *Id.*

After the jury exited the courtroom, the trial court, the prosecuting attorney, and defense counsel convened to discuss the disruption. *Id.* The

trial judge explained on the record that he initially did not witness the juror sleeping because the courtroom officer blocked his view. The judge repositioned himself after the matter was brought to his attention and then observed Juror No. 2 asleep. *Id.* at 66-67. The judge did not believe the juror had been asleep for an extended period of time. *Id.* at 66.

The court allowed counsel for the parties to state their positions on the record. *Id.* at 67. The prosecutor asked the court to remove Juror No. 2 and replace him with an alternate. *Id.* 67. After consultation with his client, defense counsel objected to the removal of Juror No. 2 and asked that he remain seated, adding that if the issue presented itself again, counsel would be "inclined to revisit it." *Id.* at 67. The trial court permitted the juror to remain seated but warned counsel that if Juror No. 2 fell asleep again, he would be removed regardless of the positions of the parties. *Id.* at 67-68.

The trial resumed after the morning break with no further issues, and, after the lunch break, the Commonwealth resumed its direct examination of Detective Ryan Mong of the Lebanon City Police Department. *Id.* at 125. Shortly before the afternoon recess, the trial court stopped the Commonwealth's examination and excused Juror No. 2, after observing for a second time that he had fallen "sound asleep" during the examination of Det. Mong. *Id.* at 141.

"The discharge of a juror is within the sound discretion of the trial court. Absent a palpable abuse of that discretion, the court's determination will not be reversed." *Commonwealth v. Jacobs*, 639 A.2d 786, 790 (Pa. 1994);

- 5 -

***Bruckshaw v. Frankford Hosp. of City of Philadelphia***, 58 A.3d 102 (Pa. 2012); and, ***Commonwealth v. Saxton***, 353 A.2d 434 (Pa. 1976).

Based on the recitation above, we conclude that the record was adequate to justify the court's removal of Juror No. 2 for twice falling asleep during the testimony of witnesses for the Commonwealth. The trial judge removed Juror No. 2 after twice observing him "sound asleep" during the examinations of two Commonwealth witnesses. Moreover, after initial observation, the trial judge placed his observations on the record, allowed counsel for both parties to state their respective positions, and granted defense counsel's request to give Juror No. 2 a second chance to properly discharge his obligations as a juror. Furthermore, the court warned counsel that, if Juror No. 2 were observed sleeping on a second occasion, he would be removed regardless of the positions advocated by the parties. Under these circumstances, and given the obvious risk to trial fairness posed by a sleeping juror, we are satisfied that the trial court soundly exercised its discretion.

Appellant cites ***Saxton*** and ***Bruckshaw*** to support his argument that the trial court abused its discretion in failing to develop a sufficient record before dismissing Juror No. 2. We are unpersuaded by these authorities, which are easily distinguished from the present case.

In ***Saxton***, the trial court removed a juror because of suspected drug use, not sleeping during the trial. Our Supreme Court concluded that the trial judge abused his discretion in discharging the juror since there was no competent evidence in the record to support the conclusion that drug use

prevented the juror from discharging his duties, the juror denied all inquiries concerning drug abuse, and the opinions of an observing physician (conveyed privately to the trial judge outside the presence of counsel) were not based upon medical tests or examinations designed to assess drug use. *See Saxton*, 353 A.2d at 436.

*Bruckshaw* is even less relevant to this case. There, Bruckshaw argued that the removal of a principal juror and the substitution of the second alternative juror constituted reversible error. Our Supreme Court agreed, noting several troubling irregularities. First, the removal of the principal juror was undertaken "by a court officer, not the trial court, which was unaware of what transpired until the substitution was brought to its attention by Bruckshaw after the verdict, [when the court was] unable to remediate the error in any way other than the award of a new trial." *Bruckshaw*, 58 A.3d at 112. "Second, the substitution was completed without notice to the parties or an opportunity to explore or contest whether [the juror] was able or unable to serve." *Id.* "Third, [the dismissed juror] was not replaced with the next alternate in line, but with the last chosen alternate[, which called into question the decision to choose one alternate over another]." *Id.* Given these important concerns, the Supreme Court held that, "the removal of a juror can only be done by a trial court, on the record, in open court, with notice to the parties, for cause." *Bruckshaw*, 58 A.3d at 113. In contrast with the facts in *Bruckshaw*, each of these requirements was met in the present case; hence, *Bruckshaw* does not support relief under the present circumstances.

In his second issue, Appellant argues that the trial court abused its discretion in permitting the Commonwealth to introduce photographs and videos of uncharged drug activity taken from Appellant's cellular telephone prior to execution of the January 5, 2023 search warrant. The basis of Appellant's objection is that the Commonwealth failed to give appropriate, pretrial notice in accordance with its obligation under Rule 404(b) of the Pennsylvania Rules of Evidence.[2] At trial, defense counsel objected that he received the data extracted from Appellant's cellular telephone on the night before trial and that he was substantially deprived of the opportunity to secure expert review of the data and images.

The Commonwealth responded that it made a memory stick, containing the images and data extracted from Appellant's cellular telephone, available to defense counsel at the end of March or the beginning of April 2024, approximately two months before the commencement of Appellant's trial in late June 2024. The Commonwealth further explained that it did not rely upon mail delivery for transmission of discovery materials due to privacy concerns and the risk of loss. Instead, the Commonwealth advised defense counsel

---

[2] In relevant part, Rule 404(b)(3) provides:

> (3) *Notice in a Criminal Case*. In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(3).

that the memory stick would be available for pick up at the front desk of the District Attorney's office. In addition, one week prior to trial, the Commonwealth forwarded to defense counsel an email reminding him that he still had not picked up the memory stick containing images and data recovered from Appellant's cellular telephone.

The trial court credited the Commonwealth's attestation that the memory stick was made available to defense counsel two months before trial. As such, the trial court held that the Commonwealth did not violate its notice obligation under Rule 404(b)(3). The court further ruled that the Commonwealth could only present images from Appellant's cellular telephone that were filmed one year prior to Appellant's arrest in early January 2023. After careful review, we discern no abuse of discretion in the trial court's determination. Thus, Appellant's second claim merits no relief.

In his third claim, Appellant asserts that the trial court erred in barring him from calling his son as a witness. While acknowledging that there is a prohibition against permitting a witness to testify before a jury in a criminal case where it is known or anticipated that the witness will invoke his Fifth Amendment privilege against self-incrimination, Appellant claims that he should have been permitted to call his son to the stand in order to vindicate his right to put on a complete defense, including evidence which tended to show that the contraband seized in the shared residence belonged to his son. *See* Appellant's Brief at 26-29.

Upon learning that Appellant intended to call his son as a witness, and in anticipation that Appellant's son might invoke his Fifth Amendment privilege, that trial court contacted counsel for Appellant's son, who appeared at trial by telephone outside the presence of the jury. Counsel confirmed that he had spoken with Appellant's son and advised him to invoke his right against self-incrimination. Appellant's son then confirmed that he intended to follow his attorney's advice. Thereafter, Appellant's son was placed under oath (outside the presence of the jury) and affirmed that he refused to testify based upon his rights under the Fifth Amendment.

This procedure did not violate Appellant's right to put on a defense. Our Supreme Court has previously held:

> "[A] witness should not be placed on the stand for the purpose of having him exercise his [Fifth Amendment] privilege before the jury." *Commonwealth v. Greene*, 285 A.2d 865, 867 (Pa. 1971) (witness indicted for same crime as defendant); *See also United States v. Salerno*, 505 U.S. 317, 321 (1992) (witness who properly invokes privilege against self-incrimination and refuses to testify is unavailable to defense as witness); *Commonwealth v. Todaro*, 569 A.2d 333, 335 (Pa. 1990) (Commonwealth, once informed that witness intends to claim privilege against self-incrimination, commits error in calling witness to stand before jury); *Commonwealth v. Collins*, 616 A.2d 1012, 1015 (Pa. Super. 1992) (trial court's refusal to allow witness for defense to take stand was proper where witness had been indicted for same crime and counsel had informed trial court that witness had been advised to invoke his Fifth Amendment privilege against self-incrimination).

*Commonwealth v. Champney*, 823 A.2d 403, 415 (Pa. 2003) (defendant was not denied constitutional right to call witnesses on his behalf in murder prosecution when the trial court ruled that witness, who was arrested and

- 10 -

charged in connection with the murder prior to defendant's trial, was unavailable to testify, where witness informed the trial court that she intended to invoke her privilege against self-incrimination.). For each of the reasons stated above, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026